Sheila **ROBINSON–SCOTT**, Plaintiff,

v.

**DELTA AIR LINES, INC.**, Defendant.

Civil Action No. 1:96CV1561–RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 8, 1998.

Allan Leroy Parks, Jr., Matthew C. Billips, K. Lee Adams, Kirwan, Parks, Chesin & Miller, Atlanta, GA, for Plaintiff.

Hunter R. Hughes, III, Rogers & Hardin, Atlanta, GA, Marguerite Hopkins Taylor, Benjamin Alexander Stone, Delta Air Lines, Inc. Law Dept., Atlanta, GA, for Defendant.

## ORDER

STORY, District Judge.

Plaintiff Sheila Robinson–Scott brought this civil rights action for damages and equitable relief, alleging violations of her rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. [hereinafter referred to as the "ADA"], and the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. [hereinafter referred to as the "FMLA"]. This case is before the Court on Defendant's Motion for Summary Judgment [24–1]. After reviewing the entire record and considering arguments of the parties, this Court enters the following Order.

### I. FACTUAL BACKGROUND

Plaintiff began her employment with Delta as a flight attendant on March 3, 1969. In 1984, Dr. Gary Myerson diagnosed Plaintiff with fibrositis, commonly referred to as fybromyalgia. Dr. Myerson treated Plaintiff intermittently until 1992. Later, Plaintiff was under the care of Dr. Christopher Armour. Dr. Armour also diagnosed Plaintiff with fybromyalgia. Dr. Armour last saw Plaintiff in

December of 1995. Plaintiff's symptoms include severe pain, numbness, insomnia, nausea, headaches, eye problems and stomach problems. When Plaintiff's condition flares up, she is sometimes unable to work. Generally, Plaintiff has "flare-ups" about once a month. Plaintiff has had "flare-ups" which lasted more than two weeks. As to Plaintiff's attendance record, Plaintiff was absent a total of 138 days from 1969 until 1977. See Defendant's Exhibit # 36. From 1979 until 1993, Plaintiff was absent a total of 509 days. See Defendant's Exhibit # 36.[1] During Plaintiff's employment, she was repeatedly warned and disciplined regarding her attendance.

In the 1980's, Plaintiff began to inquire about obtaining ground-based positions with Delta. In September of 1991, Plaintiff was placed on probation because of her unacceptable attendance level. In March of 1994, Plaintiff received a final warning regarding her absenteeism. On November 22, 1994, Plaintiff was suspended for severe absenteeism and later terminated.

### II. LEGAL ANALYSIS

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that the court shall grant summary if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." The applicable substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 249–50, 106 S.Ct. at 2510–11.

When the non-movant has the burden of proof at trial, the movant may carry its burden at summary judgment by demonstrating the absence of an essential element of the non-movant's claim. *Celotex Corp. v. Catrett,*

---

1. Plaintiff gave birth on May 22, 1978. Prior to this date, Plaintiff was on maternity leave.

477 U.S. 317, 106 S.Ct. 2548, 91 L.E.2d 265 (1986). In determining whether the movant has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the non-movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. If the movant meets this burden, the non-movant then has the burden of showing that summary judgment is not appropriate by setting forth "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.Proc. 56(e).

In employment discrimination cases, if there is a lack of direct evidence of discrimination, the plaintiff has the initial burden of proving a prima facie case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.E.2d 668 (1973). Once the plaintiff has met its burden, the burden shifts to the employer to show some non-discriminatory reason for the termination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the employer meets this burden, the plaintiff must then prove that the proferred reason is pretext. *Id.*

### B. Family Medical Leave Act

 In the Complaint, Plaintiff alleged Defendant violated the FMLA by terminating Plaintiff because of her use of sick leave available under Defendant's normal policies.[2] Under the FMLA an employer is prohibited from interfering with, restraining, or denying an employee the exercise of any right to leave under the Act. 29 U.S.C. § 2615. See also 29 U.S.C. §§ 2611–2619. Only eligible employees are entitled to leave under the Act. 29 U.S.C. § 2612. Defendant argues Plaintiff is not an "eligible employee" under the Act, and Defendant's motion as to the FMLA claim should be granted. In contrast, Plaintiff argues FMLA eligibility is presumed in the case at bar, and Defendant's motion should be denied.

**2.** Although 29 C.F.R. § 825.700 states that an employer must abide by any employment benefit program or plan that provides greater medical leave rights to employees than the rights provided by the FMLA, this provision does not provide a private cause of action under the Act for any alleged violation of an employer plan. See *Rich v. Delta Air Lines Inc.,* 921 F.Supp. 767 (N.D.Ga.

Whether Plaintiff is an "eligible employee" must be determined by the relevant statutes and case law. "Eligible employee" is defined under 29 U.S.C. § 2611(2)(A) as an employee who has been employed for at least 12 months by the employer and has completed at least 1,250 hours of service with such employer during the previous 12–month period. See also 29 C.F.R. § 825.110(a). If an employer does not maintain an accurate record of hours worked by an employee, the employer has the burden of showing that the employee has not worked the requisite hours. 29 C.F.R. § 825.110(c). "An employer must be able to clearly demonstrate that such an employee did not work 1,250 hours during the previous 12 months in order to claim that the employee is not 'eligible' for FMLA leave." Id.

Defendant contends it has kept accurate records of all hours worked for all fight attendants, and Plaintiff has not worked a minimum of 1,250 hours during the 12–month period after the FMLA became effective or the 12–month period prior to her suspension on November 22, 1994. Plaintiff argues Defendant failed to keep an accurate record of hours worked and Plaintiff is presumed to be an eligible employee.

Whether an employee has worked the minimum 1,250 hours of service is determined according to the principles established under the Fair Labor Standards Act for determining compensable hours of work (see 29 C.F.R. Part 785). The determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA. The determination is not limited by methods of recordkeeping, or by compensation agreements that do not accurately reflect all of the hours an employee has worked for or been in service to the employer. Any accurate accounting of actual hours worked under FLSA's principles may be used.

1996). Cf. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.E.2d 82 (1979) (where section of Securities Exchange Act did not expressly provide for a private cause of action, it was not necessary to determine whether an implied private remedy was necessary to effectuate the purposes of that section).

29 C.F.R. § 825.100(c). According to *Birdwell v. City of Gadsden,* 970 F.2d 802, 807 (11th Cir.1992), "Whether a certain set of facts and circumstances constitute work for purposes of the FLSA is a question of law." Generally, periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. 29 C.F.R. § 785.16. See also *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

Defendant contends it maintains records of hours worked. Defendant refers to each period of work as "duty hours." Defendant keeps records of all "duty hours" completed by each flight attendant. Plaintiff was required to report for duty one hour prior to the scheduled departure of a flight, and Plaintiff was responsible for assisting disembarking passengers and readying the plane for the next flight. However, "duty hours" begin at sign-in, the time at which a flight attendant is required to report for a trip, and end at "block-in," the time at which the flight stops at the gate when it arrives from its last trip. Defendant did not record the time Plaintiff performed duties after each flight "blocked-in." Defendant's failure to record this time leads the Court to conclude that Defendant did not keep an accurate accounting of hours actually worked. Therefore, Plaintiff is presumed to have worked 1,250 hours during the previous 12–month period. Consequently, for Defendant to overcome this presumption, Defendant must demonstrate that Plaintiff did not work 1,250 hours during the previous 12–month period. See 29 C.F.R. § 825.110(c).

■ Defendant explains that by multiplying the time Plaintiff remained on board after "block-in" by the number of duty periods, the period between sign-in and "block-in," one can determine the amount of time spent "working" in addition to "duty hours." Defendant's evidence demonstrates that Plaintiff worked no more than 1,164 hours during the 12–month period after the FMLA

became effective and no more than 1,111 hours during the 12–month period prior to Plaintiff's suspension. See Russell Affidavit. Plaintiff failed to present any evidence on the issue of hours of service contrary to Defendant's evidence. Therefore, Plaintiff is not an eligible employee under the FMLA, and this Court must grant Defendant's motion as to this claim.

### C. Americans with Disabilities Act

■ Plaintiff alleged Defendant refused to provide Plaintiff with reasonable accommodations for her disability, discharged her because of her disability and discriminated against her based on her disability. To establish a prima facie case under the ADA, the plaintiff must show that she has a disability, she is a qualified individual, and she was discriminated against because of her disability. *Harris v. H. & W. Contracting Co.,* 102 F.3d 516 (11th Cir.1996).

Defendant contends it is entitled to summary judgment because Plaintiff was not an "individual with a disability." According to 42 U.S.C. § 12112, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual...." Under the ADA, "disability" is defined as a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff contends she has an impairment, fybromalgia, and this impairment substantially limits her major life activities. Plaintiff testified that her symptoms include severe pain, diarrhea, numbness, blurred vision, and insomnia. Each of these symptoms results in a physical impairment.[3]

However, Plaintiff must also demonstrate that the impairment substantially limits at least one of Plaintiff's major life activities. Federal regulations provide a non-exhaustive list of "major life activities;" this list includes caring for oneself, performing manual tasks,

---

**3.** A physical or mental impairment is any physiological disorder, or condition, affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine. 29 C.F.R. § 1630.2(h)(1).

walking, seeing, breathing, learning and working. See *Abbott v. Randon Bragdon, D.M.D.*, 107 F.3d 934 (1st Cir.1997); 29 C.F.R. § 1630.2(i). Plaintiff testified that when she experiences a "flare up" she is sometimes unable to do household chores. Plaintiff also testified that she is in pain daily. Whether Plaintiff is substantially limited in her ability to perform a major life activity depends on whether the average person in the general population could perform such tasks or whether Plaintiff is significantly restricted as to the condition, manner or duration under which she could perform such tasks as compared to the average person in the general population. 29 C.F.R. § 1630.2(j). In determining whether Plaintiff is substantially limited, the Court should consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact, or the expected permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j).

Plaintiff's testimony demonstrates that her impairment substantially limits her ability to engage in major life activities such as performing manual tasks at home, digesting food properly, and seeing. Plaintiff is restricted as to the conditions and duration under which she can perform these major life activities. Plaintiff testified that when she experiences a "flare-up" sometimes the symptoms are so severe she is confined to her bed all day. Furthermore, Dr. Myerson testified that when a fybromyalgia patient has a "flare-up" she might experience difficulty in performing day tasks.[4] Dr. Myerson also testified that if the pain is severe, the patient is substantially limited during that period of time.[5]

The case at bar is distinguishable from *Aquinas v. Federal Express Corp.*, 940 F.Supp. 73 (S.D.N.Y.1996), cited by Defendant.[6] In *Aquinas*, there was no evidence that the plaintiff was substantially limited in her ability to undertake activities such as caring for herself, performing manual tasks, walking, seeing, hearing, speaking or learning. In this case, there is evidence Plaintiff is substantially limited in performing such tasks and functions. Therefore, there is an issue of fact as to whether Plaintiff is an individual with a disability.

■ Defendant also argues Plaintiff is not a "qualified" individual with a disability. Defendant contends dependability is an essential function of Plaintiff's employment and the failure of a flight attendant to appear consistently for work substantially impairs Delta's ability to meet Federal Aviation Administration regulations regarding the number of flight attendants on its flights. Plaintiff argues Defendant's dependability criterion is too subjective and should not be considered by the court in determining whether Plaintiff was qualified. According to 42 U.S.C. § 12111(8),

> The term 'qualified individual with a disability' means an individual with a disability who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a

---

**4.** Defendant presented evidence through the testimony of Dr. Jerome Blumenthal that fybromyalgia does not lead to joint destruction, does not involve other organ systems which could be potentially dangerous, and does not affect longevity. However, Plaintiff was treated by Dr. Blumenthal for only a few months in 1994, and Dr. Blumenthal conceded that he was not an expert on fybromyalgia and that he referred Plaintiff to a rheumatologist.

**5.** See *Vande Zande v. State of Wisconsin*, 44 F.3d 538 (1995) (intermittent impairment that is characteristic manifestation of a disability is a part of the underlying disability).

**6.** Defendant also cited *Zimmerman v. General Motors*, 959 F.Supp. 1393 (D. Kan.1997). In *Zimmerman*, the plaintiff claimed that fybromyalgia was one of her impairments. However, in that case the court limited its discussion to whether the plaintiff was substantially limited in her ability to perform the major life activity of working. Only when an individual is not substantially limited with respect to any other major life activity should the court consider the individual's ability to perform the major life activity of working. 29 C.F.R. Pt. 1630, App. In the case at bar, Plaintiff produced evidence that she is substantially limited with respect to major life activities other than working.

written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

The evidence of Plaintiff's attendance record indicates that Plaintiff is not a qualified individual because she cannot perform the essential functions of the employment position that she holds or desires even with reasonable accommodation. To be a qualified individual "an employee must be able to meet all of a program's requirements in spite of his [disability]."[7] *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Plaintiff cannot meet the dependability requirement necessary to maintain employment with Defendant.

The case at bar is similar to *Jackson v. Veterans Administration,* 22 F.3d 277 (11th Cir.1994). In *Jackson,* the plaintiff, a housekeeping aid, alleged his termination from the Veterans Administration was a violation of the Rehabilitation Act. The Court of Appeals held because the plaintiff "was absent numerous times on a sporadic, unpredictable basis, he could not fulfill the essential function of his employment, that of being present on the job." *Jackson,* 22 F.3d at 279. Similarly, Plaintiff's consistent attendance is an essential function of her employment. Furthermore, Defendant submitted evidence that it considers dependability to be an essential function of the position. Defendant's exhibits include an excerpt from Delta's In–Flight Service Handbook. The handbook states, "It is incumbent upon all Delta personnel to report for assignments in a punctual manner and on a consistent basis to fulfill all duties of the job...." Plaintiff does not dispute the number of absences; however, Plaintiff contends she was qualified because her absences were within Defendant's sick leave policy.[8] However, Plaintiff misunderstands the purpose of Defendant's sick leave

policy. Defendant's policy expressly states that it is intended exclusively as a form of pay protection, and there is no evidence that Defendant considered Plaintiff's use of sick leave in deciding to terminate Plaintiff. Defendant considered Plaintiff's overall work record and decided to terminate Plaintiff based on her failure to attend regularly. Although Plaintiff criticized Defendant's dependability policy as vague and meaningless, Plaintiff failed to present any evidence that she could meet all of Defendant's job requirements in spite of her alleged disability. Therefore, Plaintiff failed to establish a prima facie case under the ADA.

## III. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment [24–1] is **GRANTED**.

---

7. Under 42 U.S.C. § 12117(b), administrative agencies should enforce the provisions of the Rehabilitation Act of 1973 and the Americans with Disabilities Act consistently. Both statutes provide similar definitions for the term "qualified individual." Therefore, the case law interpreting the Rehabilitation Act of 1973 is relevant to this analysis. See e.g. *Tyndall v. National*

*Education Centers, Inc. of California,* 31 F.3d 209 (4th Cir.1994).

8. Plaintiff testified by affidavit that as a twenty-five year employee she was entitled to eleven weeks of sick leave per year, and she had used less than one-tenth of her available sick days when she was suspended and terminated.